**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**In re: Grand Jury No. 09-1**

                     **Case No. 6:10-mc-38-Orl-31DAB**

**ORDER**

This matter came before the Court upon consideration of the Motion to Quash Grand Jury Subpoena and for Return of Property (the "Motion") (Doc. 12) filed by Signature Pharmacy, Inc. ("Signature"), and the response in opposition thereto (the "Response") (Doc. 16) filed by the U.S. Attorneys' Office. The Court heard oral argument on Wednesday, May 19, 2010. (Doc. 17).

**I. Overview**

On February 27, 2007, law enforcement agents from the U.S. Drug Enforcement Agency, Florida Department of Law Enforcement, U.S. Food and Drug Administration, Orlando Metropolitan Bureau of Investigation, Orlando Police Department, U.S. Internal Revenue Service, New York Bureau of Narcotics Enforcement, and others, raided two Signature pharmacy locations[1] pursuant to search warrants issued by a Florida Circuit Court Judge. The agents seized, *inter alia*,

---

[1]Signature operated two pharmacies in Central Florida: a traditional pharmacy located on Aloma Avenue in Winter Park and a compounding pharmacy located on Kuhl Avenue near downtown Orlando. A compounding pharmacy creates customized medications for patients whose health care needs may not be met by manufactured medications (including, for example, patients who need specialized dosing or are allergic to inert ingredients such as binders or dyes in commercially available products). International Academy of Compounding Pharmacists, What is Pharmacy Compounding?, http://www.iacprx.org/site/PageServer?pagename=What_is_Compounding.

hundreds of thousands of patient prescriptions, all of Signature's electronically-stored information, and many (if not most) of its drug inventories and financial records. The warrants ostensibly sought evidence of Signature's alleged violation of federal and Florida statutes restricting the sale of anabolic steroids and human growth hormone.[2]

On April 5, 2007, the State Court entered an order sealing the evidence seized during the raids and transferring the sole custody and control of the evidence to the Office of Statewide Prosecutor. In the fall of 2007, however, the evidence was physically transferred – unbeknownst to the State Court and in contravention of its order – to the United States Attorneys' Office. More than two years later, after no indictment had ever been sought or returned by the State of Florida, the Office of Statewide Prosecutor filed a "Formal Notice of Intent Not to Prosecute" with the State Court. Thereafter, in December 2009, the United States Attorneys' Office – acting on behalf of the above-captioned federal grand jury – subpoenaed various local law enforcement agencies, commanding them to "produce" the seized evidence.[3]

During a hearing on December 22, 2009, the State Court learned that the evidence seized during the raids had been transferred to the United States Attorneys' Office in violation of its order and that a federal grand jury had subpoenaed the seized evidence. In light of the "Formal Notice

---

[2] The targets of these warrants included Signature and its principals: Robert Stan Loomis, Naomi Loomis, Kenneth Michael Loomis, Kirk Calvert and Tony Palladino (hereinafter collectively referred to as "Signature").

[3] According to the Government, the subpoenas were served "for the purpose of clarifying the ownership of and control over the seized evidence. . . ." (Doc. 2 at 4). Notwithstanding the fact that the evidence had been transferred to the United States Attorneys' Office, the Government took the position that the Office of Statewide Prosecutor and state/local law enforcement agencies were still the "custodians" of the seized evidence.

of Intent Not to Prosecute," the State Court ordered the evidence seized during the raids to be immediately returned to Signature.

Nearly three months after the State Court ordered that the evidence be returned to Signature, the U.S. Attorneys' Office filed an *ex parte* petition for this Court to authorize it to review and present the seized evidence to the grand jury. In its petition, the U.S. Attorneys' Office argued that the subpoenas granted "the U.S. Attorneys' Office the right to the seized evidence." (Doc. 2 at 5). On April 1, 2010, the Court ordered the U.S. Attorneys' Office to subpoena Signature directly if the grand jury still wished to review the seized evidence. (Doc. 5 at 2). The Court did not, at that time, however, make any explicit finding as to the U.S. Attorneys' Office "right to" or "ownership" of the seized evidence. On April 12, 2010, the U.S. Attorneys' Office issued a grand jury subpoena to Signature.

On April 26, 2010, Signature moved the Court to quash the grand jury's subpoena and order the U.S. Attorneys' Office to return its property pursuant to FED. R. CRIM. P. 17(c) and 41(g). According to Signature, the subpoena is unreasonably broad and violates the Fourth Amendment to the U.S. Constitution, constitutes an improper attempt to circumvent the State Court's authority, and violates the privacy rights of Signature's customers and other third parties.[4] Furthermore, because the U.S. Attorneys' Office continues to deprive Signature of its property in violation of the State Court's order, Signature contends that its property must be returned.

---

[4]Various "John and Jane Doe" parties have putatively joined in Signature's Motion. (Doc. 14). It is unclear, however, whether they have standing and the Court does not address their claims.

For the reasons, *infra*, Signature's Motion will be granted. The Court has jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1331 and 18 U.S.C. § 3231.

## II. Background and Procedural History[5]

### A. Scope of the State Court's Search Warrants and Extent of the Seizure

Three search warrants were executed upon Signature. In pertinent part, the warrants authorized the seizure of the following property as evidence:

> Documents of dominion and control, prescriptions, orders to and from manufacturers, supply lists, theft and loss reports, list and/or inventory of all drugs surrendered to any federal agency, inventory of all drugs on site, Federal Express labels and shipping

---

[5]Signature is currently litigating in at least three separate actions that arise out of or are related to the February 27, 2007 raids on its pharmacies: (1) the State Court matter in which the search warrants originated, which remains pending before the Ninth Judicial Circuit Court, in and for Orange and Osceola Counties, Florida, *In re Matter of Search Warrant*, Case No. 2007-CA-1237 (Fla. Cir. Ct. 2007); (2) a § 1983 civil action against multiple defendants, including the MBI agent who secured the search warrants at issue here, which is pending before this Court, *Signature Pharmacy, Inc. v. Soares et al.*, Case No. 6:08-CV-1853 (M.D. Fla. 2008); and (3) the instant grand jury matter.

In addition to the foregoing, between January 2007 and February 2008, four successive indictments against Signature's principals were returned by two grand juries in Albany County, New York. All four indictments, however, were dismissed and the presentment of the fourth indictment, in particular, was "so improper as to impair the integrity of the grand jury" that the trial court denied the People of New York's motion for leave to re-present their charges to a new grand jury. *People v. Loomis*, 896 N.Y.S.2d 208, 209 (N.Y. App. Div. 2010) (citations and quotations omitted). On February 18, 2010, the New York appellate court affirmed and agreed with the trial court's findings, but as "a matter of discretion [and] in the interest of justice," modified the trial court's order "by reversing. . .[the denial of] the People's motion for leave to re-present the charges. . . ." *Id.* at 211. As of today, however, no charges appear to have been re-presented and it is unclear whether the statute of limitations or Plaintiffs' speedy trial rights would preclude a subsequent prosecution.

The background and procedural history relevant to this Order have been drawn primarily from the parties' filings in the instant matter, but also include undisputed material from the State Court's docket in the search warrant matter and the § 1983 action.

> records, ledgers, packaging, bank statements, documents of vehicle ownership, statements or invoices, address books with contact information, telephone contact lists, cellular telephones and stored information, memory cards, micro chips, data cables and vendor software to facilitate transfer of images, audio equipment, video or surveillance equipment, fax machines, blackberries, telephone numbers, passwords, laptop computers, desk-top [sic] computers.
>
> Checking records, whether original, copied, recorded or electronically stored, documenting the receipt and disbursement of monies paid to or received from customers and/or clients, and records documenting how such monies were disbursed or invested, including, but not limited to, bank records, cancelled checks (front and back), monthly or periodic statements, deposit slips and detail documents for those deposits, memoranda of incoming and outgoing wire transfers, debit and/or credit memoranda, cashier's check records, current transaction reports, and any correspondence involving each account with a bank or financial institution whether original, copied, recorded or electronically stored.
>
> Telephone bills and toll records, appointment journals, Rolodex, desk calendars, phone messages or logs, and telephone answering machine tapes; tax returns, bank records, escrow agreements, escrow agent communications, operating agreements, leases, invoices, copied [sic], recorded or electronically stored.
>
> Computer hardware . . . .[I]nternal and peripheral storage devices such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, and other electronic media devices; peripheral input/output devices such as keyboards, printers, scanners, plotters, video display monitors, and optical readers; and related communications devices such as modems, network adapters, hubs, routers, switches, cables and connections, and recording equipment, as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys, locks or dongles, "electronic address books", [sic] portable data assistants, laptop computer systems, desktop computer systems, calculators, or any other storage media where data can be stored. . . .Computer software required to run the above hardware and/or access data from the hardware. . . .Data maintained on the computer, or computer related storage devices. . . .In particular, data in the form of images, word [sic] documents and spread sheets [sic] and supporting documentation of illegal transactions, and/or log files recording the transmission of said documents; Documents, notes or equipment relating to passwords, encryption codes and data security devices. . . .

*See*, *e.g.*, *Signature Pharmacy, Inc. v. Soares et al.*, Case No. 6:08-CV-1853 (M.D. Fla. 2008)

(Doc. 127-5).

The warrants required that "any evidence or property seized. . .be brought before [the State Court] to be disposed of according to law," and provided that a "<u>Return</u> reporting the execution of the warrant[s] and an <u>Inventory</u> of any evidence or property seized . . . be filed with the court within ten (10) days of the date of issuance." *Id*.

According to the returns that were filed with the State Court, the following property, *inter alia*, was seized:

- Attorney client information/documents

- Computers, hard drives, DVRs and power supplies

- Patient prescriptions

- General business records, tax returns, corporate notebooks, financial records, ledgers, bank transactions, licenses, permits and expense reports

- Current accounts payable, drug invoices, credit card invoices, check payments, and wire transfer requests

- Billing statements, rebate forms and shipping invoices/records

- Insurance reimbursement statements, Medicare information and other health insurance information

- Customer phone lists

- Patient compliance information

- Correspondence, planners, Rolodexes

- Blank prescription and bottle labels

- Inventory lists

- Vendor files

- Trade show/press kits

- Investment documents

- Doctor contact, marketing, and conference information

- Compounding formulas

- Shredded documents

- Pharmaceuticals (including Crestor, Stanozol, Nandrolone Decanoate, Testosterone, Testosterone Cypionate, Testosterone Enanthanate, Sustanon Testosterone, Depo-Testosterone, Somatropin, Steno-testosterone, Testosterone Propionate, Human Chorionic Gonadotropin, Phentermine hydrochlorine, Oxandrolone, Oxymetholone, Ketamine, Sildenafil, and Androlone).

(Docs. 7-17 and 7-18).

In short, law enforcement seized everything essential to Signature's business. Indeed, the State Court observed that "a tremendous amount of material was seized," (Doc. 12-3 at 2), and the U.S. Attorneys' Office concedes that "agents may have seized virtually everything in Signature's offices. . . ." (Doc. 16 at 6). According to Signature's President, Naomi Loomis:

> [O]fficers confiscated virtually every document we would need to run our business. They seized thousands of blank prescription labels that were yet to be used to label prescriptions. They seized an actual file cabinet instead of removing the documents inside it. They seized documents containing communications from various law firms that had represented us over the years. They removed the tape from the security camera that would have recorded the events on the day of the raid. They seized business papers which could not have any possible evidentiary value for the investigation, such as receipts for office items that company purchased that were kept for accounting or tax purposes. . . .
>
> They seized prescription drugs not identified as part of their investigation [such as Crestor], holding them beyond their expiration date and therefore making them useless for resale.

*Signature Pharmacy, Inc. v. Soares et al.*, Case No. 6:08-CV-1853 (M.D. Fla. 2008) (Doc. 198, ¶¶ 16-17). While a limited number of items were apparently returned at the outset of the State Court matter, (Doc. 16 at 7), there is simply no way of knowing what remains in the possession of the U.S. Attorneys' Office (or other law enforcement entities).

### B. The Course of the State Court Litigation

On April 5, 2007 – approximately a week after the raids – the State Court issued an order sealing all of the medical records seized during the raids, establishing the Office of Statewide Prosecution for the State of Florida and its agents as the sole custodian of the seized records, and prohibiting the Office of Statewide Prosecution from reviewing, disclosing or distributing the seized records "for any reason, with the sole exception that the records may be reviewed for the singular purpose of obtaining the names and addresses of the customers/'patients' for notification purposes." (Doc. 2-1 at 7). The State Court also ordered the Office of Statewide Prosecution to "provide written notice, either by mail or personal service, to any person whose medical records were seized pursuant to the search warrants" and permitted patients to file objections to a review of their records. (Doc. 2-1 at 7). The Office of Statewide Prosecution moved for a rehearing on the seal order and the State Court denied same. (Doc. 11-5). Thereafter, the Office of Statewide Prosecution took an interlocutory appeal by petitioning for a writ of certiorari. (Doc. 11-5). On November 7, 2007, the Fifth District Court of Appeal denied the petition. (Doc. 11-6).

During the next two years, the State Court received over 2,600 objections from patients expressing privacy concerns about the seizure of their prescription records. On November 24, 2009, the State Court entered an order establishing a procedure for holding individual hearings on the thousands of objections. (Doc. 11-9). The order required, *inter alia*, that the "Office of Statewide Prosecution and/or the MBI" produce "to the Court the original of all records seized relating to the parties whose hearings are being conducted that day. . . . The records, having been previously ordered sealed, shall be in the custody of an authorized representative of either the

Office of Statewide Prosecutor and/or MBI to maintain any chain of custody. . . ." (Doc. 11-9 at 6).

On December 4, 2009, the U.S. Attorneys' Office served a federal grand jury subpoena on MBI to produce the evidence seized pursuant to the search warrants. (Doc. 2 at 3). On December 15, 2009, it served additional grand jury subpoenas on the City of Orlando Police Department and the Sheriff of Orange County, Florida. (Doc. 2 at 3).

On December 16, 2009, the Office of Statewide Prosecution filed an emergency motion to set aside the State Court's order regarding the objection hearings. (Doc. 11-11). According to the motion, the Office of Statewide Prosecution simply was "unable. . .to do the document research intended by the Court's Orders. . . ." (Doc. 11-11, ¶ 5). Sometime soon thereafter, the Office of Statewide Prosecution filed an undated "Formal Notice of Intent Not to Prosecute," in which it:

> [F]ormally notifie[d] the court and all parties and interested persons in writing[]
> that the Office of Statewide Prosecution will not prosecute any entity or persons for
> violation of any Florida statutes arising from the evidence seized under the search
> warrants that are the subject of this litigation. The Statewide Prosecutor's decision
> is a unilateral, executive decision and does not affect the rights of any other agency
> of the State or Federal government to enforce State or Federal laws in this case. . . .
> [T]he Statewide Prosecutor's decision in [this] matter is intended to clear the way
> for Federal authorities to continue and complete appropriate investigations in the
> case."

(Doc. 11-12).

On December 22, 2009, the State Court held a hearing on the emergency motion. During the hearing, the State Court learned – for the first time – that the evidence seized during the raids had been transferred to the U.S. Attorneys' Office,[6] that a federal grand jury had subpoenaed MBI

---

[6]Federal investigative agencies had been involved in the investigation of Signature since the very outset of the investigation in 2005. Furthermore, Florida Office of Statewide Prosecutor Anne Wedge-McMillen, lead counsel appearing before the State Court, was cross-designated as a U.S. Attorney for the lion's share of the State Court proceedings.

and local law enforcement to produce the evidence, and that the Office of Statewide Prosecution had filed its "Formal Notice of Intent Not to Prosecute." On January 8, 2009, the State Court issued the following order:

> Accompanying the Statewide Prosecutor's [Emergency Motion] was [a] pleading entitled "State's Formal Notice of Intent Not to Prosecute." The document is undated, was not provided to the Court prior to the date [of the December 22, 2009 hearing] and contains no certificate of service. The substance of the "Notice" is that ". . . the Office of Statewide Prosecution will not prosecute any entity or persons for violations of any Florida statutes arising from the evidence seized under the search warrants that are the subject of this litigation."
>
> At the hearing the Assistant Statewide Prosecutor advised the Court that a "Subpoena to Testify Before Grand Jury" and for production of documents had been served on the Sheriff of Orange County . . . [MBI, and the City of Orlando Police Department]. Each was issued under the application of the United States Attorney for the Middle District of Florida and authorized by Assistant U.S. Attorney Katherine M. Ho. Each required either the production of "[a]ny and all evidence seized . . ." or ". . . the ORIGINAL seized evidence." It was represented to this Court that the sole reason that the custody of these records were "transferred" to the federal agents, in contravention of this Court's Order, was in response to these duly authorized federal subpoenas. It was further represented to this Court that the confidentiality required by this Court's orders has been maintained by the federal authorities at least up to the date of this hearing.
>
> The written presentation by the STATEWIDE PROSECUTOR indicated that the "prescription records that are the subject of the Court's Order . . . are no longer in the custody of any State agency" . . . . No permission from this Court to release those records was sought, no notification was provided to this Court that Federal subpoena's [sic] had been issued and no relief from this Court's prior orders was requested. This Court must presume that the entities who received the subpoenas advised both the U.S. Attorney and the responsible District Court Judge and/or Magistrate Judge that the state circuit court protective orders were in place[7] . . . .
>
> In that the STATEWIDE PROSECUTOR has filed its "Formal Notice of Intent Not to Prosecute" and has indicated that the evidence seized will not be utilized in any state prosecution, the records seized serve no useful purpose to the State of Florida and

---

[7]No "District Court Judge and/or Magistrate Judge" of this Court was ever apprised of the State Court's protective orders and the federal grand jury subpoenas were, as is customary, issued without any prior consultation with this Court.

can and should be returned to the entities from whom they were seized without being reviewed. . . .

WHEREFORE . . . .

The records held by the "Prosecuting Authority" as previously defined in prior orders of this Court are to be immediately released and returned to the entities from whom they were seized unless prohibited from doing so by some court/authority with superior or different jurisdictional authority[8]. . . .

That upon return and/or release of the previously protected records, or if unable to be returned, the expiration of 30 days from the date of this order, this matter will be dismissed with jurisdiction retained solely for the purpose of ruling on the Motion for Order to Show Cause Against [the Statewide Prosecutor] . . . .

(Doc. 2-3 at 1-3).

### C. Federal Grand Jury Subpoena

On April 12, 2010, the U.S. Attorneys' Office issued a subpoena *ad testificandum* and *duces tecum* to "Signature Pharmacy, Inc." (Doc. 12-1 at 1). The subpoena did not specifically identify or command the appearance of a designated corporate representative or records custodian, but simply provided:

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below[:]. . . .

[United States District Court; Courtroom:]. . . .

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s): . . .

Any and all evidence that was seized during the searches of the below-listed locations, authorized by search warrants issued on February 26, 2007, by the Circuit Court of the Ninth Judicial Circuit in and for Orange and Osceola Counties, Florida ("the Court"): 1200 Kuhl Avenue, Orlando, Florida and 2304 Aloma Avenue, Winter Park, Florida; and that was ordered to be released to Signature Pharmacy, Inc. by a January 8, 2010 order of the Court (but that remains in the physical custody of law enforcement and the

---

[8]No such order of prohibition was ever sought or issued.

-11-

> U.S. Attorney's Office). The scope of this subpoena does not include any evidence that was previously returned to Signature Pharmacy, Inc. by law enforcement. . . .

(Doc. 12-1).

No other instructions or alternative methods of compliance were included with the subpoena. Furthermore, no impoundment order from this Court was ever sought.

### III. Standard of Review and Applicable Law

#### A. Federal Grand Jury Proceedings

As the Supreme Court has observed:

> The grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. Unlike the court, whose jurisdiction is predicated on a specific case or controversy, the grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643, 70 S.Ct. 357, 363-364, 94 L.Ed. 401 (1950). The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush. "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' " *Branzburg v. Hayes*, 408 U.S. 665, 701, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972), quoting *United States v. Stone*, 429 F.2d 138, 140 (CA2 1970).

*United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991).

With respect to a grand jury's subpoena power, the Court has said:

> A grand jury subpoena is thus much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged. "[T]he identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning.' " *Blair v. United States*, 250 U.S. 273, 282 [39 S.Ct. 468, 471, 63 L.Ed. 979] (1919). In short, the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists. *See Hale v. Henkel*, 201 U.S. 43, 65 [26 S.Ct. 370, 375, 50 L.Ed. 652] (1906).

*Id*.

However, a federal grand jury's subpoena power is not without limit. *Branzburg*, 408 U.S. at 688. Although grand juries may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation is generally unrestrained by technical procedural or evidentiary rules, they are not licensed to engage in arbitrary fishing expeditions. *R. Enterprises, Inc.*, 498 U.S. 298-99. Nor may they select targets of investigation out of malice or an intent to harass. *Id*.

In the context of subpoenas *duces tecum* issued by a grand jury, FED. R. CRIM. P. 17(c) is controlling. *Id*. Rule 17 provides that the "court on motion made promptly may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." What is "unreasonable or oppressive" depends on the context, but courts must begin with the presumption that a grand jury acts within the legitimate scope of its authority. *Id*. at 300. Accordingly, a grand jury subpoena issued through "normal channels" is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance. *Id*.

**B. Federal Rule of Criminal Procedure Rule 41(g)**

In pertinent part, Rule 41(g) provides:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. . . . If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its later proceedings.

FED. R. CRIM. P. 41(g). The Advisory Committee Notes regarding the 1989 amendment to what is now Rule 41(g) observed:

Prior to the amendment, [the rule] did not explicitly recognize a right of a property owner to obtain return of lawfully seized property even though the government might be able to protect its legitimate law enforcement interests in the property despite its return-e.g., by copying documents or by conditioning the return on government access to the property at a future time. As amended, [the rule now] provides that an aggrieved person may seek return of property that has been unlawfully

seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it.

No standard is set forth in the rule to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property. . . .[R]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property. If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.

Advisory Committee's Note, 124 F.R.D. 397, 427-28 (1989).

When a Rule 41(g) motion is filed after the termination of criminal proceedings, "the person from whom the property was seized is presumed to have a right to its return and the government must demonstrate that it has a legitimate reason to retain the property." *U.S. v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001). Furthermore, a post-termination motion is a motion in equity, for which district courts must determine all "equitable considerations in order to make a fair and just decision." *U.S. v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005).

## IV. Discussion

The grand jury's subpoena must be quashed.[9] First, on its face, the subpoena is clearly overbroad and compliance would, as a practical matter, be unreasonable. Second, the subpoena – standing alone and without more – cannot substitute for a search warrant and alienate Signature from property that the State Court has ordered should be immediately returned.

That the subpoena is overbroad and unreasonable on its face warrants little discussion. As the Government has conceded, the subpoena plainly seeks to compel production of "virtually

---

[9] For purposes of this Order, the Court has assumed that the subpoena was issued through "normal channels," *R. Enterprises, Inc.*, 498 U.S. at 301. That assumption, however, is not readily apparent within the unique procedural posture of this case and the admitted purpose for which the U.S. Attorneys' Office subpoenaed the evidence.

everything" essential to Signature's business (including, *inter alia*, power supplies, blank prescription labels and other tangible property that cannot possibly have any testimonial or evidentiary value before the grand jury).[10] The fact that law enforcement's prior seizure has already had the effect of putting Signature out of business is of no moment; the grand jury's continued and indefinite possession of all the property will certainly preclude Signature from re-opening its doors. The Court sees little meaningful distinction between the scope and practical effect of the instant subpoena and the unlawful subpoena in *Hale v. Henkel*, 201 U.S. 43 (1906) (finding subpoena that demanded production of all understandings, contracts, or correspondence between a corporation and six other companies before a federal grand jury "far too sweeping" because it would essentially shut down the operations of the subpoenaed business). Furthermore, the subpoena commands an unidentified corporate representative – who has not seen or examined Signature's books, financial information and other relevant corporate records for nearly three years – to appear before the grand jury and provide meaningful testimony concerning voluminous amounts of documentary and physical evidence without any meaningful opportunity to review those records and refresh his or her recollection. Finally, there appear to be at least colorable constitutional infirmities in the probable cause affidavits upon which the warrants used to originally seize the evidence were issued, and the Court has found that the warrants themselves failed to comply with the particularity requirements of the Fourth Amendment.[11]

---

[10]This subpoena would also apparently allow the Government, acting on behalf of the grand jury, to review attorney-client privilege documents, which is clearly improper.

[11]*See Signature Pharmacy, Inc. v. Soares et al.*, Case No. 6:08-CV-1853 (M.D. Fla. 2008) (Doc. 287), which, in pertinent part, is incorporated by reference into the instant Order.

More importantly, the grand jury's subpoena is improper on procedural grounds. Throughout its papers, the U.S. Attorneys' Office ignores a rather fundamental (but perhaps increasingly ignored) proposition of law: a subpoena is not a search warrant. With the exception of exemplars and other limited classes of physical evidence, *see* 1 Sara Sun Beale et al., GRAND JURY LAW AND PRACTICE § 6:5 (2d. ed. 2008), a grand jury subpoena *duces tecum* – without more – cannot be used to simply seize a witness's property. Documents, records and tangible evidence remain the exclusive property of the person required to produce them before the grand jury and, absent a court order or stipulation between the witness and the government, the witness has the right to remove his evidence at the end of each day of the grand jury's proceedings and at the end of the grand jury's session. *See*, *e.g.*, *Application of Mesta Machine Company*, 184 F.2d 375, 375-76 (3d Cir. 1950); *Application of Bendix Aviation Corp.*, 58 F.Supp. 953, 954 (S.D.N.Y. 1945). For this reason, U.S. Attorneys are specifically cautioned:

> [I]t is strongly recommended that an impounding order be obtained at the initiation of the grand jury investigation (or at least before the return of any documents to the grand jury) and that it impound the documents at least for the life of that grand jury. This will obviate any claim by a subpoena recipient that it has complied with the subpoena by delivering the documents to the grand jury and has a right to remove the documents at the end of that session.

U.S. Department of Justice, Antitrust Division, *Grand Jury Manual*, Ch. IV, § E., 1. c., http://www.justice.gov/atr/public/guidelines/206826.htm#IVE1. In contrast, a search warrant, which is supported by probable cause and interposes a neutral magistrate between a citizen and law enforcement, permits an officer to literally seize and take immediate possession of one's property. *Horton v. California*, 496 U.S. 128, 133 (1990) ("[A] seizure deprives the individual of dominion over his or her person or property."); *California v. Hodari*, 499 U.S. 621, 624 (1991) ("From the time of the founding to the present, the word 'seizure' has meant a 'taking possession

-16-

. . . .') (internal citations and quotations omitted); *see also* Jon W. Bruce and James W. Ely, Jr., *Modern Property Law* 220 (5th ed. 2003) (discussing the historical concept of "seisin" and its importance to property law).

Neither the grand jury nor the U.S. Attorneys' Office acting on its behalf may simply take possession of Signature's property through a subpoena. When Signature's property was seized (unlawfully) by the State of Florida pursuant to invalid search warrants, the property came into the possession of the State Court. The State Court did not lose possession of the property simply because the U.S. Attorneys' Office took physical custody of it and issued a subpoena on behalf of the federal grand jury. The State Court lost possession, of its own accord, when it decided to dispose of the property in a final order requiring the property to immediately be returned to Signature.[12]

Upon review, Signature has overcome the presumption of regularity and reasonableness normally attached to grand jury proceedings and has carried its burden of demonstrating unreasonableness. Furthermore, the U.S. Attorneys' Office has failed to demonstrate that it has a legitimate reason to retain Signature's property.

---

[12]As an alternative and additional basis for this Order, the Court accords full faith and credit to the State Court's orders of December 22, 2009 and January 8, 2009 pursuant to 28 U.S.C. § 1738 and *Cuevas v. Kelly*, 873 So. 2d 367 (Fla. 2d DCA 2004) (according full faith and credit to Mississippi judgment notwithstanding apparent lack of privity).

**V. Conclusion**

For the foregoing reasons, it is **ORDERED** and **ADJUDGED** that:

1. Signature Pharmacy, Inc.'s Motion to Quash Grand Jury Subpoena and for Return of Property (Doc. 12) is **GRANTED** and the grand jury's subpoena is hereby **QUASHED**;

2. The United States Attorneys' Office and its agents shall **immediately** return to Signature Pharmacy, Inc. any and all property within its actual or constructive custody or control, including any and all copies of Signature Pharmacy, Inc.'s electronically-stored information, that was seized pursuant to the search warrants that were issued on February 26, 2007 by the Ninth Judicial Circuit Court, in and for Orange and Osceola Counties, Florida; and

3. Signature Pharmacy, Inc. and any of its owners, agents or employees shall maintain, preserve and otherwise not destroy or cause to be spoliated, any of the property returned by the United States Attorneys' Office in Paragraph Two, *supra*, until further order of this Court.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 10, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Parties

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE